## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **JOSHUA LEE-SNOW CHRISTIE and ALLISON LEEANNE BRENNAN** | § § § § | |
| *Plaintiffs* | § § | |
| **vs.** | § § | **CIVIL NO. _____** |
| **HANKOOK TIRE AMERICA CORPORATION, HANKOOK TIRE & TECHNOLOGY CO., LTD. F/K/A HANKOOK TIRE MANUFACTURING COMPANY; HANKOOK TECHNOLOGY GROUP CO., LTD. F/K/A HANKOOK TIRE WORLDWIDE CO., LTD.; HANKOOK MANUFACTURING COMPANY, LTD.; HANKOOK TIRE WORLDWIDE COMPANY, LTD. F/K/A HANKOOK TIRE COMPANY, LTD.; HANKOOK TIRE WORLDWIDE, LTD.; HANKOOK TIRE MFG. CO, LTD. DAEJEON PLANT, HANKOOK TIRE COMPANY, LTD., HANKOOK TIRE MFG. CO., LTD.; HANKOOK TIRE MANUFACTURING TENNESSEE LP; SILVER METALX, INC.; SILVER METALX INC. D/B/A SMX; SILVER METALX INC. D/B/A SMX-WHEELS; SYNERGIES CASTINGS USA, LLC.; PRECISION CASTINGS, LLC.** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| *Defendants* | § § | |

### <u>Plaintiffs' Original Complaint</u>

COME NOW, JOSHUA LEE-SNOW CHRISTIE, Individually and ALLISON LEEANNE BRENNAN, Individually, Plaintiffs herein, and file this their Original Complaint complaining of HANKOOK TIRE AMERICA CORPORATION, HANKOOK

TIRE & TECHNOLOGY CO., LTD. F/K/A HANKOOK TIRE MANUFACTURING COMPANY, HANKOOK TECHNOLOGY GROUP CO., LTD. F/K/A HANKOOK TIRE WORLDWIDE CO., LTD., HANKOOK MANUFACTURING COMPANY, LTD.; HANKOOK TIRE WORLDWIDE COMPANY, LTD. F/K/A HANKOOK TIRE COMPANY, LTD.; HANKOOK TIRE WORLDWIDE, LTD.; HANKOOK TIRE MFG. CO, LTD. DAEJEON PLANT, HANKOOK TIRE COMPANY, LTD., HANKOOK TIRE MFG. CO., LTD, HANKOOK TIRE MANUFACTURING TENNESSEE, LP (hereinafter referred to as "Hankook" or "Hankook Defendants"); SILVER METALX, Inc., SILVER METALX INC. D/B/A SMX, SILVER METALX D/B/A SMX-WHEELS, SYNERGIES CASTINGS USA, LLC; and PRECISION CASTINGS, LLC (the "Rim Defendants" and for cause of action would respectfully show the Court the following:

## I. JURISDICTION AND VENUE

1.      Jurisdiction and venue are proper in the Federal District Court of the Eastern District of Texas.  This is a product liability and negligence cause of action arising out of a tire explosion occurring in Kilgore, Gregg County, Texas within the boundaries of the Eastern District of Texas.  These claims are filed pursuant to the diversity statue at 28 U.S.C. § 1332.

## II. PARTIES

**A.   PLAINTIFFS**

2.      Plaintiff, JOSHUA LEE-SNOW CHRISTIE, is a citizen of the United States and a resident of Tatum, Rusk County, Texas, and brings suit in his Individual capacity.

3.      Plaintiff, ALLISON LEEANNE BRENNAN is a citizen of the United States and a resident of Tatum, Rusk County, Texas, and brings suit in her Individual capacity.

**B.   DEFENDANTS**

4.      Defendant, HANKOOK TIRE AMERICA CORPORATION is a New Jersey Corporation, doing business in the state of Texas, and service of process will be had upon

its registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas, 77056.

5.      Defendant, HANKOOK TIRE & TECHNOLOGY CO., LTD. F/K/A HANKOOK TIRE MANUFACTURING COMPANY is a Korean corporation, incorporated under the laws of the Republic of Korea, with its principal place of business in South Korea and doing business in the State of Texas.  Defendant may be served with process pursuant to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as "The Hague Convention."

6.      Defendant, HANKOOK TECHNOLOGY GROUP CO., LTD. F/K/A HANKOOK TIRE WORLDWIDE CO., LTD. is a Korean corporation, incorporated under the laws of the Republic of Korea, with its principal place of business in South Korea and doing business in the State of Texas. Defendant may be served with process pursuant to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as "The Hague Convention."

7.      HANKOOK MANUFACTURING COMPANY, LTD. is a Korean corporation, incorporated under the laws of the Republic of Korea, with its principal place of business in South Korea and doing business in the State of Texas. Defendant may be served with process pursuant to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as "The Hague Convention."

8.      HANKOOK TIRE WORLDWIDE COMPANY, LTD. F/K/A HANKOOK TIRE COMPANY, LTD.  is a Korean corporation, incorporated under the laws of the Republic of Korea, with its principal place of business in South Korea and doing business in the State of Texas.  Defendant may be served with process pursuant to The Convention

on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as "The Hague Convention."

9.      HANKOOK TIRE WORLDWIDE, LTD. is a Korean corporation, incorporated under the laws of the Republic of Korea, with its principal place of business in South Korea and doing business in the State of Texas. Defendant may be served with process pursuant to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as "The Hague Convention."

10.      HANKOOK TIRE MFG. CO, LTD. DAEJEON PLANT is a Korean corporation, incorporated under the laws of the Republic of Korea, with its principal place of business in South Korea and doing business in the State of Texas.  Defendant may be served with process pursuant to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as "The Hague Convention."

11.      HANKOOK TIRE COMPANY, LTD. is a Korean corporation, incorporated under the laws of the Republic of Korea, with its principal place of business in South Korea and doing business in the State of Texas. Defendant may be served with process pursuant to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as "The Hague Convention."

12.      HANKOOK TIRE MFG. CO., LTD is a Korean corporation, incorporated under the laws of the Republic of Korea, with its principal place of business in South Korea and doing business in the State of Texas. Defendant may be served with process pursuant to The Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as "The Hague Convention."

13.     HANKOOK TIRE MANUFACTURING TENNESSEE, LP is a Tennessee corporation with its principal place of business at 2950 International Blvd., Clarksville, TN 37040, and doing business in the State of Texas, and service of process will be had upon its registered agent Corporate Creations Network Inc., 205 Powell Pl, Brentwood TN, 37027.

14.     Defendants, listed in paragraphs 4-13 introduced tires, including the subject tire, into the stream of worldwide commerce, which they designed, manufactured, tested, inspected and marketed, alone and in conjunction with their authorized dealers. Defendants knew at all relevant times that their tires would be sold, used and serviced in the State of Texas.  Defendants intentionally targeted Texas citizens for purposes of selling their tires.  Having sold tens of thousands of their tires to Texas tire dealers and Texas consumers like JOSHUA LEE SNOW-CHRISTIE, Defendants cannot be heard to complain when called to respond to complaints of defects involving those same products. The defendants' contacts with the State of Texas are sufficient such that the Court's exercise of personal jurisdiction over them is proper.

15.     Defendant, SILVER METALX, INC. is A Delaware Corporation, incorporated under the law of the State of Delaware, with its principal place of business in California, and doing business in the State of Texas, and service of process will be had upon its registered agent, The Corporate Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, DE, 19801.

16.     Defendant, SILVER METALX, INC., D/B/A SMX is a Delaware Corporation, incorporated under the law of the State of Delaware, with its principal place of business in California, and doing business in the State of Texas, and service of process will be had upon its registered agent, The Corporate Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, DE, 19801.

17.     Defendant, SILVER METALX, INC., D/B/A SMX-WHEELS is a Delaware Corporation, incorporated under the law of the State of Delaware, with its principal place of business in California, and doing business in the State of Texas, and service of process will be had upon its registered agent, The Corporate Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, DE, 19801.

18.     SYNERGIES CASTINGS USA, INC. is Delaware Corporation, incorporated under the law of the State of Delaware, with its principal place of business in California, and doing business in the State of Texas, and service of process will be had upon its registered agent, The Corporate Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, DE, 19801.

19.     PRECISION CASTINGS, INC. is a California corporation, incorporated under the law of the State of California, with its principal place of business in California, and doing business in the State of Texas, and service of process will be had upon its registered agent, CT Corporation System, 28 Liberty Street, New York, NY  10005.

20.     The Rim Defendants listed in paragraphs 15-19, introduced tire rims, including the subject rim, into the stream of worldwide commerce, which they designed, manufactured, tested, inspected and marketed, alone and in conjunction with their authorized dealers.  Defendants knew at all relevant times that their rims would be sold, used and serviced in the State of Texas.  Defendants intentionally targeted Texas citizens for purposes of selling their rims. Defendants cannot be heard to complain when called to respond to complaints of defects involving those same products.  Defendants' contacts with the State of Texas are sufficient such that the Court's exercise of personal jurisdiction over them is proper.

### III.  STATEMENT OF FACTS

21.     The subject tire involved in this accident was a Hankook tire, bearing DOT number T7XM RFH0617 ("tire in question"), which was being inflated on April 25, 2020 by JOSHUA LEE SNOW-CHRISTIE in a manner which was intended by and reasonably foreseeable to the Hankook Defendants.  The subject rim involved in this accident was a Silver Metalx upon which the subject tire was being inflated.  The rim was being used in a manner in which it was intended by and reasonably foreseeable to the Rim Defendants.

22.     While mounting the 16.0" tire in question on the 16.5" rim in question, the weftless tire bead failed which resulted in an explosion.  As a result, JOSHUA LEE SNOW-CHRISTIE suffered catastrophic injuries.   The acts and/or omissions of Defendants, jointly and severally, were a producing and proximate cause of the injuries and damages to Plaintiffs as set forth below.

### IV.  CAUSE OF ACTION FOR STRICT LIABILITY FOR DEFECTIVE DESIGN, MANUFACTURE, AND MARKETING AGAINST HANKOOK DEFENDANTS

23.     Upon information and belief, the Hankook Defendants, through control, direction, supervision and coordination, designed, manufactured, imported, and sold the tire in question.  The tire in question was marketed, promoted, advertised, imported, and sold by the Defendants. Defendants are thus the "manufacturer" of the subject tire within the meaning of TEX. CIV. PRAC. & REM. CODE §82.001(4) and are liable under the doctrine of strict products liability in tort for injuries produced by defects in the subject tire arising out of the design, manufacture and/or marketing of said tire.  Also, as a seller and importer of this defective product, Defendants are liable pursuant to TEX. CIV. PRAC. & REM. CODE §82.003(6).

**A. Design Defect**

24.     The tire in question was defectively designed for its use and made the product unreasonably dangerous to users. The defective design was present when the tire in question left the control of Defendants.  Specifically, the tire was designed with a weftless tire bead.  At the time the product left the control of Defendants there existed a safer alternative design, a single stand tire bead, that was both economically and technologically feasible.  The benefit of the safer alternative design would not decrease the utility of the product in any significant regard that would warrant its exclusion. Moreover, the single stand tire bead would have prevented this accident from occurring, or significantly reduced the risk of harm, because it would have stopped the tire from exploding.  At the time of the accident, the tire in question was in substantially the same condition as it was at the time it was placed into the stream of commerce.

25.     At the time the tire in question was designed, manufactured, and sold by Defendants, the same was defective in design and unreasonably dangerous with respect to its susceptibility to explode due to the weftless bead, which defective and unreasonably dangerous condition was a producing cause of the accident in question and of the injuries to Joshua Lee Snow-Christie, and of the damages suffered by Plaintiffs.

26.     Defendants knew or should have known that tires such as the tire in question were unreasonably dangerous due to their susceptibility to explode, yet continued to manufacture, design, market and sell this product to consumers and then failed to recall the same, which action was a producing cause of the accident in question and of the injuries to Joshua Lee Snow-Christi, and of the damages suffered by Plaintiffs.

**B. Defect in Construction/Manufacturing and/or Composition**

27.     Pleading in the alternative, at the time the tire in question was designed, manufactured, and sold by the Hankook Defendants, it contained manufacturing defects

with regard to its material construction and was in an unreasonably dangerous condition. Such was the producing cause of the injuries to Joshua Lee Snow-Christie, and of the damages suffered by Plaintiffs.

28.     The tire in question deviated from Hankook's planned specifications or planned output in terms of quality or construction, rendering the tire in question defective.   The tire in question was unreasonably dangerous because it failed and exploded causing severe injury to JOSHUA LEE SNOW-CHRISTIE.

29.     The bead of the tire in question should not have failed during inflation in any way shape or form. The fact that the bead failed and the tire exploded lead to the logical conclusion that it was defectively constructed or composed of defective materials. This defect in construction and composition existed when the product left the control of the Hankook Defendants and deviated from other identical products. The Hankook Defendants are strictly liable under the doctrine of strict products liability in tort for injuries produced by defects in the subject tire arising out of the design, manufacture and/or marketing of said tire for defects in composition and construction.

## C. Breach of Express Warranties

30.     Pleading in the alternative, as a result of the defective and unreasonably dangerous condition of the tire in question, Defendants, in selling the tire in question in such condition, breached express warranties, which breaches of express warranties were a producing cause of the accident in question and of the injuries to Joshua Lee Snow-Christie and the damages suffered by Plaintiffs.   Defendants breached an express warranty by selling a product that was defective and unreasonably dangerous, but marketed it as a safe and quality made product.

**D. Breach of Implied Warrant of Merchantability and Fitness for a Particular Use**

31.     Pleading in the alternative, the Hankook tire in question was sold to be mounted on a tire rim without exploding.  The tire in question was not merchantable because it was not of fair and average quality, and it was not fit for the ordinary purpose for which tires are used.   These implied warranties were breached because the tire was defective and unreasonably dangerous at the time it left the Defendants' possession. These breaches were a producing cause of the injuries to Joshua Lee Snow-Christie and the damages suffered by Plaintiff.

**E. Warnings Defect**

32.     Pleading in the alterative, both prior to and subsequent to the sale of the tire in question, Defendants manufactured, distributed and sold the tire in question with defective and inadequate warnings.  Specifically, they failed to adequately warn the intended users of the risk of its sixteen (16) inch tire exploding when mismatched with a sixteen and one half (16.5) inch rim.  The defect in the warning existed at the time the tire left the control of Defendants.  The likelihood and gravity of danger associated with product and the feasibility of adding the proper warning far outweighed the ability of the user to anticipate the risk. Additionally, Defendants had a continuing duty to warn of the defective nature of its product after the product left its control. The defective and inadequate warnings caused the incident in question and the injuries to Joshua Lee Snow-Christie, and the damages suffered by Plaintiffs.

**F.  Negligence**

33.     Upon information and belief, Defendants were negligent in the design, manufacture, marketing and sale of the tire in question. But for the Defendants' actions the injuries to Joshua Lee Snow-Christie and damages to the Plaintiffs would not have occurred.  Further, the conduct of the Defendants was a substantial factor in the injuries

to Joshua Lee Snow-Christie and damages to the Plaintiffs.  The burden of Defendants to do what was right and act in a way that was not negligent was insignificant compared to the probability of injury that would result. Such negligence includes, but is not limited to, the following acts of omission and commission:

(a)     Designing and selling the tire with a propensity to suddenly and without warning explode;

(b)     Failing to properly and adequately test to determine the tire's susceptibility to suddenly and without warning explode;

(c)     Failing to adequately and properly test the tire and its component parts and failing to act with reasonable care to protect users of the tire after gaining actual knowledge of other incidents involving the same and/ or similarly designed and/ or constructed tires exploding with tragic consequences for the users;

(d)     Failing to adequately and properly test the tire and failing to act with reasonable care to warn users of these tires from the defects involving explosions and the tragic consequences for the users;

(e)     Importing a defective product;

(f)     By using a weftless bead in the tire instead of a single strand bead; and

(g)     By failing to manufacture the tire in accordance with the tire's design specifications.

34.     Defendants committed acts of omission and commission, which collectively and severally, constituted negligence, which negligence was the cause of the accident in question and of the injuries to Joshua Lee Snow-Christie, and the damages suffered by Plaintiffs.

### G. Gross Negligence

35.    Defendants committed acts of omission and commission, which collectively and severally constituted malice and gross neglect, which malice and gross neglect was a proximate cause of the accident in question and of the injuries to Joshua Lee Snow-Christie, and of the damages suffered by Plaintiffs.   Upon information and belief, Defendants had knowledge that the tire in question was unreasonably dangerous by virtue of its design and construction.   Nevertheless, Defendants introduced the tire into the stream of commerce with conscious indifference knowing that it posed an extreme degree of risk of severe bodily injury or death to the intended user.   Also, Defendants had actual knowledge and awareness of the danger of tire and wheel mismatch yet consciously failed to provide an adequate warning of this danger on the tire in question.

36.    As a result of the incident the subject of this lawsuit, Joshua Lee Snow-Christie sustained severe injuries resulting from the explosion of the tire in question. Plaintiffs has sustained damages including, but not limited to, pain, suffering and mental anguish., and any and all other damages that may be proven at the trial of this matter.

### IV.  CAUSE OF ACTION FOR STRICT LIABILITY AGAINST AGAINST SILVER METALX, INC., SILVER METALX, INC., D/B/A SMX, SILVER METALX, INC., D/B/A SMX-WHEELS, SYNERGIES CASTINGS USA, LLC AND PRECISION CASTINGS, INC. ("RIM DEFENDANTS")

37.    Upon information and belief, the Rim Defendants, through control, direction, supervision and coordination, designed, manufactured, imported, and sold the rim in question.  The rim in question was marketed, promoted, advertised, imported, and sold by the Defendants. Defendants are thus the "manufacturer" of the subject rim within the meaning of TEX. CIV. PRAC. & REM. CODE §82.001(4) and are liable under the doctrine of strict products liability in tort for injuries produced by defects in the subject rim arising out of the marketing of said rim.  Also, as a seller and importer of this

defective product, Defendants are liable pursuant to TEX. CIV. PRAC. & REM. CODE §82.003(6).

**A. Warnings Defect**

38.     Both prior to and subsequent to the sale of the rim in question, Defendants manufactured, distributed and sold the rim in question with defective and inadequate warnings.  Specifically, they failed to adequately warn the intended users of the risk of a tire exploding when mismatched with its sixteen and one half (16.5) inch rim.  The defect in the warning existed at the time the rim left the control of Defendants.  The likelihood and gravity of danger associated with product and the feasibility of adding the proper warning far outweighed the ability of the user to anticipate the risk. Additionally, Defendants had a continuing duty to warn of the defective nature of its product after the product left its control. The defective and inadequate warnings caused the incident in question and the injuries to Joshua Lee Snow-Christie, and the damages suffered by Plaintiffs.

**B.  Design Defect**

39.     Pleading in the alternative, the rim in question was defectively designed for its use and made the product unreasonably dangerous to users. The defective design was present when the rim in question left the control of Defendants.  Specifically, the rim was designed as a 16.5" rim when the Rim Defendants knew or should have known that 16.5" rims were outdated relics that had been phased out of the tire and rim industry due to their propensity to be mismatched with a 16.0" tire, a dangerous combination.  At the time the product left the control of Defendants there existed a safer alternative design, a 16.0" rim, that was both economically and technologically feasible.  The benefit of the safer alternative design would not decrease the utility of the product in any significant regard that would warrant its exclusion.  Moreover, the 16.0" rim would have prevented

this accident from occurring, or significantly reduced the risk of harm, because it would have prevented the tire from exploding.  At the time of the accident, the rim in question was in substantially the same condition as it was at the time it was placed into the stream of commerce.

40.     At the time the rim in question was designed, manufactured, and sold by Rim Defendants, the same was defective in design and unreasonably dangerous with respect to its susceptibility to be mismatched with a 16.0" tire.  The design was defective and created an unreasonably dangerous condition was a producing cause of the accident in question and of the injuries to Joshua Lee Snow-Christie, and of the damages suffered by Plaintiffs.

41.     Defendants knew or should have known that 16.0" rims such as the rim in question were unreasonably dangerous due to their propensity to be mismatched with a 16.0" tire, yet continued to manufacture, design, market and sell this product to consumers and then failed to recall the same, which action was a producing cause of the accident in question and of the injuries to Joshua Lee Snow-Christi, and of the damages suffered by Plaintiffs.

**C. Negligence**

42.     Upon information and belief, Defendants were negligent in the marketing and sale of the rim in question. But for the Defendant's actions the injuries to Joshua Lee Snow-Christie and damages to the Plaintiffs would not have occurred.  Further, the conduct of the Defendants was a substantial factor in the injuries to Joshua Lee Snow-Christie and damages to the Plaintiffs.  The burden of Defendants to do what was right and act in a way that was not negligent was insignificant compared to the probability of injury that would result. Such negligence includes, but is not limited to, the following acts of omission and commission:

(a)     Failing to act with reasonable care to protect users of the rim after gaining actual knowledge of other incidents involving the same and/or similarly designed and/or constructed rim;

(b)     Failing to act with reasonable care to warn users of these rim from the risk of mismatch explosions and the tragic consequences for the users; and

(c)     Selling/Importing a product with an inadequate and defective warning.

43.     Defendants committed acts of omission and commission, which collectively and severally, constituted negligence, which negligence was the cause of the accident in question and of the injuries to Joshua Lee Snow-Christie, and the damages suffered by Plaintiffs.

**D. Gross Negligence**

44.     Defendants committed acts of omission and commission, which collectively and severally constituted malice and gross neglect, which malice and gross neglect was a proximate cause of the accident in question and of the injuries to Joshua Lee Snow-Christie, and of the damages suffered by Plaintiffs.  Upon information and belief, Defendants had knowledge that the rim in question was unreasonably dangerous by virtue of the fact that it contained an inadequate and defective warning about the danger of a tire and rim mismatch.  Also, Defendants knew that the rim was unsuitable and unreasonably dangerous when used in conjunction with commercially available tires. Nevertheless, Defendants introduced the rim into the stream of commerce with conscious indifference knowing that it posed an extreme degree of risk of severe bodily injury or death to the intended user.

45.     As a result of the incident the subject of this lawsuit, Joshua Lee Snow-Christie sustained severe injuries resulting from the explosion of the tire in question.

Plaintiffs has sustained damages including, but not limited to, pain, suffering and mental anguish., and any and all other damages that may be proven at the trial of this matter.

### IV. DAMAGES

46.     Plaintiffs incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 45 of this complaint as though fully set forth herein.

47.     As a direct and proximate result of the collision and the aforesaid product defects, Plaintiff, Joshua Lee Snow-Christie has incurred damages in excess of the minimum $75,000.00 jurisdiction limits of federal courts, which include:

1. Physical pain and mental anguish sustained in the past;

2. Physical pain and mental anguish that, in reasonable probability, Joshua will sustain in the future;

3. Loss of earnings sustained in the past;

4. Loss of earning capacity that, in reasonable probability, Joshua will sustain in the future;

5. Disfigurement sustained in the past;

6. Disfigurement that, in reasonable probability, Joshua will sustain in the future;

7. Physical impairment sustained in the past;

8. Physical impairment that, in reasonable probability, Joshua will sustain in the future;

9. Medical care expenses in the past;

10. Medical care expenses that, in reasonable probability, Joshua will incur in the future.

48.     As a direct and proximate cause of the collision and aforesaid product defects, Allison LeeAnne Brennan has incurred damages in excess of the minimum $75,000.00 jurisdiction limits of federal courts, which include the following:

11. Loss of household services sustained in the past;

12. Loss of household services that, in reasonable probability, Allison will sustain in the future;

13. Loss of consortium sustained in the past;

14. Loss of consortium that, in reasonable probability, Allison will sustain in the future.

## V. Pre-Judgment And Post-Judgment Interest

49.     Plaintiffs seeks pre-judgment and post-judgment interest as allowed by law.

## VI. Jury Demand

50.     Plaintiffs requests a trial by jury for all issues of fact and have submitted the requisite timely and proper jury fee.

## VII. Prayer For Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that the Defendants be cited to appear and answer herein, that this cause be set for trial before a jury, and that Plaintiffs recover judgment of and from the Defendants for their actual and punitive damages, jointly and severally, in such amount as the evidence may show and that a jury may determine to be proper, together with the prejudgment interest, post-judgment interest, costs of suit, and such other and further relief to which they may show themselves to be justly entitled at law or in equity.

Respectfully submitted,

**WIGINGTON RUMLEY DUNN
   & BLAIR, L.L.P.**
123 North Carrizo Street
Corpus Christi, Texas 78401
Tel:  (361) 885-7500
Fax:  (361) 885-0487

*/s/ Jeffrey G. Wigington*
_____
Jeff Wigington
State Bar No. 00785246
jwigington@wigrum.com
Ross Evans
State Bar No. 24064771
(Application Pending)
revans@wigrum.com

And

THE JULIAN C. GOMEZ LAW FIRM
(*Pro Hac Vice* Application Pending)
Julian C. Gomez
State Bar No. 24027326
1300 N. 10th St., Ste., 480C
McAllen, TX 78501
Tel: 956.331.2500
Fax: 956.331.2500
jcglf.com

And

SLOAN, HATCHER, PERRY, RUNGE, ROBERTSON, &
SMITH
M. RAYMOND HATCHER
State Bar No. 24002243
rhatcher@sloanfirm.com
TAMER T. ABOURAS
State Bar No. 24112456
tabouras@sloanfirm.com
101 East Whaley Street
Post Office Drawer 2909
Longview, Texas 75606
Telephone: (903) 757-7000
Facsimile: (903) 757-7574

**ATTORNEYS FOR PLAINTIFFS**